**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NEWPORT NEWS DIVISION**

| | |
|---|---|
| HUNTINGTON INGALLS INCORPORATED, | DOCUMENT FILED ELECTRONICALLY |
| *Plaintiff,* | |
| | JURY TRIAL DEMANDED |
| *v.* | |
| | Civil Action No. _____ |
| KINDER MORGAN INC., EL PASO LLC, CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO THE SUBJECT INSURANCE POLICIES, CERTAIN LONDON MARKET COMPANIES SUBSCRIBING TO THE SUBJECT INSURANCE POLICIES, RIVER THAMES INSURANCE COMPANY LIMITED, THE DOMINION INSURANCE COMPANY LIMITED, EXCESS INSURANCE COMPANY LIMITED, WORLD AUXILIARY INSURANCE COMPANY LIMITED, WINTERTHUR SWISS INSURANCE COMPANY, ROYAL SCOTTISH INSURANCE COMPANY LIMITED, SWISS UNION INSURANCE COMPANY, NATIONAL CASUALTY COMPANY OF AMERICA, ST. KATHERINE INSURANCE COMPANY PLC, LONDON AND EDINBURGH GENERAL INSURANCE COMPANY LIMITED, ACCIDENT & CASUALTY INSURANCE COMPANY OF WINTERTHUR (NO.2A/C), ARGONAUT NORTHWEST INSURANCE COMPANY, YASUDA FIRE & MARINE INSURANCE COMPANY (UK), TUREGUM INSURANCE COMPANY LIMITED, MINISTER INSURANCE COMPANY LIMITED, ASSICURAZIONI GENERALI SPA (UK BRANCH), SCOTTISH LION INSURANCE COMPANY LIMITED, CF&AU GROUP C POOL, DELTA-LLOYD NON-LIFE INSURANCE COMPANY LIMITED, TOKIO | |

MARINE & FIRE INSURANCE COMPANY
(UK) LIMITED,

*Defendants.*

## COMPLAINT

Plaintiff, Huntington Ingalls Incorporated, as successor to Newport News Shipbuilding and Dry Dock Company, on behalf of its Newport News Shipbuilding Division ("NNS"), alleges as follows:

## SUMMARY OF THE ACTION

1.      This is an insurance recovery action.  NNS seeks to enforce its rights to insurance coverage for asbestos claims and lawsuits alleged against NNS pursuant to certain excess liability insurance policies with policy periods from 1973 to 1986, which are identified by policy numbers listed in **Exhibit A** attached hereto (the "Subject Insurance Policies," "Insurance Policies," "Policies").

2.      The Subject Insurance Policies are subscribed to by Defendants Certain Underwriters at Lloyd's London Subscribing to the Subject Insurance Policies, Certain London Market Companies Subscribing to the Subject Insurance Policies, River Thames Insurance Company Limited, The Dominion Insurance Company Limited, Excess Insurance Company Limited, World Auxiliary Insurance Company Limited, Winterthur Swiss Insurance Company, Royal Scottish Insurance Company Limited, Swiss Union Insurance Company, National Casualty Company of America, St. Katherine Insurance Company Plc, London and Edinburgh General

2

Insurance Company Limited, Accident & Casualty Insurance Company of Winterthur (No.2a/C), Argonaut Northwest Insurance Company, Yasuda Fire & Marine Insurance Company (UK) Limited, Turegum Insurance Company Limited, Minister Insurance Company Limited, Assicurazioni Generali Spa (UK Branch), the Scottish Lion Insurance Company Limited, Cf&Au Group C Pool, Delta-Lloyd Non-Life Insurance Company Limited, and Tokio Marine & Fire Insurance Company (UK) Limited (collectively, "London Market Insurers" or "LMI").

3.      The Subject Insurance Policies have policy periods during the time period from approximately 1973 to 1986 and provide coverage for Tenneco, Inc., and its former subsidiaries, including NNS.

4.      On information and belief, El Paso Corporation acquired certain assets and liabilities from Tenneco, Inc., including certain of Tenneco, Inc.'s rights to insurance pursuant to the Subject Insurance Policies.

5.      On information and belief, El Paso Corporation entered into an agreement with LMI whereby El Paso Corporation agreed to indemnify LMI for any claims by former Tenneco, Inc. subsidiaries for insurance benefits against the Insurance Policies.

6.      On information and belief, Kinder Morgan Inc. acquired El Paso Corporation, which through a serious of transactions became a direct or indirect subsidiary of Kinder Morgan, Inc. known as El Paso LLC (collectively, "Kinder Morgan").  On information and belief, Kinder Morgan is the successor in interest to El Paso Corporation.

7.      On information and belief, as a result of its acquisition of El Paso Corporation, Kinder Morgan became responsible for indemnifying LMI for policy benefits that LMI pays pursuant to the terms of the Policies and/or became responsible for paying policy benefits pursuant

200860.00602/123513677v.2

to the terms of the Policies, and therefore is a party in interest because Kinder Morgan must pay any liability that NNS establishes against LMI.

8.     On information and belief, Kinder Morgan is involved in and exercises control over the handling and payment of insurance claims.

9.     NNS timely reported the asbestos claims and lawsuits pursuant to the terms of the Polices and tendered them for coverage.  To date, neither LMI nor Kinder Morgan has paid or agreed to provide coverage for the asbestos claims and lawsuits.

## THE PARTIES

10.     NNS is a corporation existing under the laws of the Commonwealth of Virginia with its principal place of business in Newport News, Virginia.  NNS was originally incorporated as Newport News Shipbuilding and Dry Dock Company, and through a series of name changes became Huntington Ingalls Incorporated.  Since the late 1800s, NNS has operated as a company in Newport News, Virginia, specializing in the design, construction, overhaul and repair of ships for the U.S. Navy and commercial customers.

11.     On information and belief, Certain Underwriters at Lloyd's London Subscribing to the Subject Insurance Policies are domiciled in the United Kingdom.  Certain Underwriters at Lloyd's London Subscribing to the Subject Insurance Policies, whose identities will be further established through discovery, subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

12.     On information and belief, Certain London Market Companies Subscribing to the Subject Insurance Policies are solvent corporations organized under the laws of the United Kingdom or other foreign sovereign, with their principal places of business in London, England. Certain London Market Companies Subscribing to the Subject Insurance Policies, whose identities

4

will be further established through discovery, subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

13.     On information and belief, River Thames Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  River Thames Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

14.     On information and belief, The Dominion Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England. The Dominion Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

15.     On information and belief, Excess Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Excess Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

16.     On information and belief, World Auxiliary Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  World Auxiliary Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

17.     On information and belief, Winterthur Swiss Insurance Company is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal

place of business in London, England.  Winterthur Swiss Insurance Company subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

18.     On information and belief, Royal Scottish Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Royal Scottish Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

19.     On information and belief, Swiss Union Insurance Company is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Swiss Union Insurance Company subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

20.     On information and belief, National Casualty Company of America is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  National Casualty Company of America subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

21.     On information and belief, St. Katherine Insurance Company Plc is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  St. Katherine Insurance Company Plc subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

22.     On information and belief, London and Edinburgh General Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  London and Edinburgh

200860.00602/123513677v.2

General Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

23.     On information and belief, Accident & Casualty Insurance Company of Winterthur (No.2a/C) is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Accident & Casualty Insurance Company of Winterthur (No.2a/C) subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

24.     On information and belief, Argonaut Northwest Insurance Company is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.   Argonaut Northwest Insurance Company subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

25.     On information and belief, Yasuda Fire & Marine Insurance Company (UK) Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Yasuda Fire & Marine Insurance Company (UK)  subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

26.     On information and belief, Turegum Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Turegum Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

27.     On information and belief, Minister Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal

place of business in London, England.  Minister Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

28.     On information and belief, Assicurazioni Generali Spa (UK Branch) is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Assicurazioni Generali Spa (UK Branch) subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

29.     On information and belief, the Scottish Lion Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Scottish Lion Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

30.     On information and belief, Cf&Au Group C Pool is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Cf&Au Group C Pool subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

31.     On information and belief, Delta-Lloyd Non-Life Insurance Company Limited is a corporation organized under the laws of the United Kingdom or other foreign sovereign, with its principal place of business in London, England.  Delta-Lloyd Non-Life Insurance Company Limited subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

32.     On information and belief, the Tokio Marine & Fire Insurance Company (UK) Limited is a corporation organized under the laws of the United Kingdom or other foreign

200860.00602/123513677v.2

sovereign, with its principal place of business in London, England.  Tokio Marine & Fire Insurance Company (UK) subscribed to one or more of the Subject Insurance Policies whose numbers are listed in Exhibit A.

33.      By the terms of the Subject Insurance Policies, LMI have agreed to consent to the jurisdiction of this Court, have agreed to comply with all requirements necessary to give this Court jurisdiction and that all matters pertinent to this lawsuit shall be determined by this Court.

34.      On information and belief, Kinder Morgan Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business in Houston, Texas.  On information and belief, Kinder Morgan Inc. is authorized to do and routinely does business in Virginia.  On information and belief, Kinder Morgan Inc. acquired El Paso Corporation which through a serious of transactions became a direct or indirect subsidiary of Kinder Morgan, Inc. known as El Paso LLC.  Prior to the transaction with Kinder Morgan Inc., El Paso Corporation agreed to indemnify LMI for all coverage benefits LMI pays pursuant to the Subject Insurance Policies and/or to pay claims pursuant to the terms of the Subject Insurance Policies.  As such, Kinder Morgan, Inc. has an interest in the outcome of this case.

35.      On information and belief, El Paso LLC formerly known as El Paso Corporation is a limited liability company organized under the laws of Delaware with its principal place of business in Houston, Texas, whose sole member is Kinder Morgan Inc.  On information and belief, El Paso LLC is authorized to do and routinely does business in Virginia.

## JURISDICTION AND VENUE

36.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, based on complete diversity of the parties and an amount in controversy exceeding $75,000, exclusive of interest and costs.

9

37.     Defendants are subject to the personal jurisdiction of this Court based on, among other things, its "[t]ransacting any business in this Commonwealth," "[c]ontracting to supply services or things in this Commonwealth," and "[c]ontracting to insure any person, property, or risk located within this Commonwealth at the time of contracting," including by undertaking all of these actions with respect to NNS.  Va. Code Ann. § 8.01-328.1.

38.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District, NNS has substantial operations in this District, and a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District, including a substantial number of the underlying asbestos-related bodily injury claims against NNS filed in the geographic area encompassed by this District.

## FACTUAL BACKGROUND

A.     **NNS's Corporate History**

39.     NNS was incorporated as Chesapeake Dry Dock & Construction Co. under the laws of the Commonwealth of Virginia on January 28, 1886 by an act of the Virginia General Assembly.  The name of the company was changed to Newport News Shipbuilding and Dry Dock Company by act of the Virginia General Assembly on February 17, 1890.

40.     On September 4, 1968, the Newport News Shipbuilding and Dry Dock Company became a wholly-owned subsidiary of Tenneco Inc., with 98-1/2% of the stockholder voting power being owned by Tenneco Inc.

41.     On November 7, 1986, Newport News Shipbuilding and Dry Dock Company became a wholly owned subsidiary of Tenneco InterAmerica Inc. (a Delaware corporation incorporated as Dixemer Petroleum Corporation on June 16, 1965).  Tenneco InterAmerica was a wholly owned subsidiary of Tenneco Inc.  The name of Tenneco InterAmerica Inc. was

10

changed on October 1, 1996, to Newport News Shipbuilding Inc.  Newport News Shipbuilding and Dry Dock Company was a subsidiary of Newport News Shipbuilding Inc., which was a subsidiary of Tenneco Inc.

42.     Tenneco Inc. spun-off Newport News Shipbuilding Inc. and its subsidiaries as a publicly traded company on December 11, 1996.  Newport News Shipbuilding and Dry Dock Company was a subsidiary of Newport News Shipbuilding Inc.

43.     Northrop Grumman Corporation, through its subsidiary, Purchaser Corp. I, acquired Newport News Shipbuilding Inc. ("Former NNS Inc.") and its subsidiaries in taking control of the company with 80.7% of the stockholder voting power.  The merger was completed on January 18, 2002 when a Certificate of Merger was filed merging the Former NNS Inc. with and into Purchaser Corp. I and simultaneously changing its name to Newport News Shipbuilding Inc., which became a subsidiary of Northrop Grumman Corporation.  Newport News Shipbuilding and Dry Dock Company was a subsidiary of Newport News Shipbuilding Inc.

44.     On September 18, 2007, Newport News Shipbuilding Inc. merged into Newport News Shipbuilding and Dry Dock Company with Newport News Shipbuilding and Dry Dock, Inc. becoming the surviving entity.  Due to this merger, Newport News Shipbuilding and Dry Dock Company became a subsidiary of Northrop Grumman Corporation.

45.     Newport News Shipbuilding and Dry Dock Company changed its name to Northrop Grumman Shipbuilding, Inc. on December 2, 2008.  Northrop Grumman Shipbuilding, Inc. remained a subsidiary of Northrop Grumman Corporation.

46.     On December 31, 2008, Northrop Grumman Ship Systems, Inc., by certificate of merger, merged into Northrop Grumman Shipbuilding, Inc. with Northrop Grumman

Shipbuilding Inc. being the survivor.  Northrop Grumman Shipbuilding, Inc. was a subsidiary of Northrop Grumman Corporation.

47.     On March 31, 2011, Northrop Grumman Corporation spun-off Northrop Grumman Shipbuilding, Inc. and all of its subsidiaries to a newly formed publicly traded company named Huntington Ingalls Industries, Inc.  Northrop Grumman Shipbuilding, Inc. became a subsidiary of Huntington Ingalls Industries, Inc. due to the spin-off.

48.     Northrop Grumman Shipbuilding, Inc. changed its name to Huntington Ingalls Incorporated on April 14, 2011 and it remains a subsidiary of Huntington Ingalls Industries, Inc.

### B.     The Asbestos Claims and Lawsuits

49.     For more than 100 years, NNS has constructed, overhauled, and repaired ships and submarines, including for the United States Navy.  From at least the 1940s until the 1970s, these entities used, at the direction of the United States Navy, asbestos-containing products, including thermal insulation, in the construction and repair of ships and submarines.  Continuing through the 1990s, Newport News Shipbuilding, Inc. engaged in the overhaul and repair of ships and submarines that contained installed asbestos products and insulation.

50.     Claimants have asserted more than 500 asbestos claims and lawsuits against NNS alleging asbestos exposure at or from the Newport News Shipyard or on ships or submarines built by NNS (collectively, the "Asbestos Lawsuits").  A substantial number of these Asbestos Lawsuits have been filed in the geographic area encompassed by this District.

51.     Claimants in the Asbestos Lawsuits are typically former Navy sailors or other ship repair personnel who served or worked on ships or submarines that were built by NNS and/or members of their families or family members of former employees of NNS.  The claimants allege exposure to asbestos from products used in the construction of the ships and submarines and/or from removal of such products during the overhaul of the ships and submarines.  The majority of the claimants allege exposure from asbestos-containing thermal

200860.00602/123513677v.2

insulation required by Navy specifications on most major piping systems in ships and submarines.

52.     NNS has incurred substantial defense costs and liability in connection with the defense and settlement of the Asbestos Lawsuits in excess of hundreds of thousands of dollars annually.

53.     Additional Asbestos Lawsuits are being, and, for the foreseeable future, will continue to be, filed against NNS annually.  As a result, NNS expects to continue to incur substantial costs for the defense, settlements, and/or judgments in connection with Asbestos Lawsuits filed in this District (and elsewhere), as a result of Asbestos Lawsuits for years to come.

**C.     The Subject Insurance Policies**

54.     During the 1960s to the mid-1990s, when NNS was a subsidiary of Tenneco, Inc., Tenneco, Inc. procured liability insurance policies that provide coverage for Tenneco, Inc. and its subsidiaries, including NNS.

55.     Tenneco, Inc.'s insurance program includes numerous excess liability insurance policies procured from various insurers, including the Subject Insurance Policies.

56.     The Subject Insurance Policies provide occurrence-based liability coverage for claims alleging bodily injury.  Occurrence-based liability policies cover bodily injury that occurs during the policy period, even if the policy period ended many years ago.

57.     The Subject Insurance Policies provide coverage for NNS, which was a subsidiary of Tenneco, Inc., from September 1968 to December 1996.  For example, Policy No. 80DD2265C (1981-1983) defines the term "Assured" as follows

> Tenneco Inc. and all affiliates and subsidiary companies as at inception of this policy
> and/or hereafter constituted, owned or controlled including all named assured specifically

13

added as such by endorsement to this policy except where such an affiliated or subsidiary company is specifically excluded by endorsement to this policy.

58.     The Subject Insurance Policies provide coverage for all sums that NNS becomes legally obligated to pay as damages on account of personal injuries, including bodily injury, caused by or growing out of an occurrence arising out of or due wholly or in part to the conduct of the Assured.

59.     In addition to damages, the Subject Insurance Policies provide coverage for the costs of litigation, settlement, adjustments and investigations of claims and suits, as well as other expenses.

60.     On information and belief, all premiums due and owing for the Subject Insurance Policies have been paid in full.

61.     All conditions precedent for coverage for the Asbestos Lawsuits pursuant to the terms of the Policies have been satisfied.

62.     Notice of the Asbestos Lawsuits was timely provided pursuant to the terms of the Policies.

63.     On information and belief, the aggregate limits applicable to products and completed operations claims in all or nearly all of the policies underlying the Subject Insurance Policies are exhausted.

**F.     Indemnification Agreement**

64.     On information and belief, El Paso Corporation entered into an agreement, whereby El Paso Corporation agreed to indemnify LMI for benefits it pays pursuant to the terms of the Subject Insurance Policies and/or to pay the benefits ("Indemnification Agreement").

14

65.    On information and belief, as a result of its acquisition of El Paso Corporation, Kinder Morgan became responsible for indemnifying LMI for policy benefits that LMI pays pursuant to the terms of the Policies and/or paying the policy benefits pursuant to the terms of the Policies.  On information and belief, any liability that NNS establishes against LMI must be paid by Kinder Morgan.

66.    On information and belief, Kinder Morgan is involved in and/or exercises control over the handling and payment of insurance claims.

67.    On information and belief, Kinder Morgan is responsible for paying policy benefits pursuant to the terms of the Subject Insurance Policies to NNS and/or indemnifying LMI for any claims that LMI pays.

**G.    NNS's Request for Coverage**

68.    The Asbestos Lawsuits allege bodily injury during the policy periods of one or more of the Subject Insurance Policies.

69.    NNS promptly and timely requested that LMI and Kinder Morgan provide coverage for costs and losses that NNS has incurred in connection with the Asbestos Suits, which amount to millions of dollars.

70.    In response, LMI and Kinder Morgan have raised numerous insurance coverage issues, which have no factual or legal basis.

71.    To date, neither LMI nor Kinder Morgan have accepted responsibility for providing coverage pursuant to the Subject Insurance Policies for any of the Asbestos Lawsuits. Instead, in an effort to avoid paying the millions of dollars in coverage to which NNS is entitled, and in breach of its duty of good faith and fair dealing, LMI and Kinder Morgan have denied and/or failed or refused to pay NNS amounts that it owes under the Policy.

15

## COUNT I

### Breach of Contract

72.     NNS hereby incorporates by reference and realleges each and every allegation set forth in Paragraphs 1 through 71 above.

73.     Through its actions and omission, LMI and Kinder Morgan have breached their contractual obligations pursuant to the terms of the Subject Insurance Policies to provide coverage for and to pay NNS for the Asbestos Lawsuits.

74.     LMI and Kinder Morgan breached the Subject Insurance Policies by failing to pay or indemnify NNS for defense costs, settlements and/or judgments that NNS has incurred in connect with the Asbestos Lawsuits.

75.     As a direct result of the breaches, LMI and Kinder Morgan have deprived NNS of the benefits of the insurance provided by the Policies.

76.     Therefore, NNS has been damaged and is entitled to judgment for breach of contract in an amount to be proven at trial.

## COUNT II

### Failure to Act in Good Faith

77.     NNS hereby incorporates by reference and realleges each and every allegation set forth in Paragraphs 1 through 76 above.

78.     Implied in the Subject Insurance Policies is a duty that LMI and Kinder Morgan act in good faith and deal fairly with NNS and do nothing to interfere with NNS's rights to receive the benefits provided by the Policies.

79.     Through their actions and omissions in relation to NNS's Asbestos Lawsuits, LMI and Kinder Morgan have, in addition to breaching their contractual obligations under the Subject

16

Insurance Policies, breached their duties of good faith and fair dealing by, not acting in good faith, denying coverage and/or failing or refusing to make payment to the insured under the policy.

80.     As a direct and result of such breaches, LMI and Kinder Morgan have deprived NNS of the benefit of the insurance provided by the Subject Insurance Policies.

81.     Pursuant to Va. Code Ann. § 38.2-209, NNS is entitled to an award of its costs and attorney fees as the Court may award as well as judgment for breach of the duty of good faith in an amount to be proven at trial.

## COUNT III

### Declaratory Judgment

82.     NNS hereby incorporates by reference and realleges paragraphs 1 through 81.

83.     The Subject Insurance Policies obligate LMI and Kinder Morgan to pay and/or indemnify NNS for all sums which NNS becomes legally obligated to pay as damages because of bodily injury as a result of claims alleging asbestos-related injuries occurring in whole or in part during the policy period of Policies.  The Policies also obligate LMI and Kinder Morgan to pay costs that NNS incurs in defense of any claim for such damages.

84.     An actual and justiciable controversy presently exists between NNS and LMI and Kinder Morgan concerning the proper construction and application of Subject Insurance Policies, and the existence, scope, and extent of the rights and obligations of the parties thereto with respect to the Asbestos Lawsuits against NNS.  Under the circumstances, a determination by this Court is necessary and proper at this time so the parties may ascertain their respective rights and obligations.

85.     NNS is entitled to a declaration from this Court, confirming that LMI and Kinder Morgan are obligated to pay for NNS's defense of the Asbestos Lawsuits and the amounts that

NNS incurs in the settlements and other resolutions of the Asbestos Lawsuits, subject only to the exhaustion of any limits that LMI and Kinder Morgan proves apply.

86.    A declaration by this Court will resolve the existing controversy between the parties, and NNS has no adequate remedy at law.

87.    Pursuant to 28 U.S.C. §§ 2201 and 2202, NNS is entitled to a declaration by the Court of the extent of Kinder Morgan's obligations to NNS.

## **PRAYER FOR RELIEF**

WHEREFORE, NNS prays for judgment as follows:

A.    On COUNT I for breach of contract, a money judgment against Defendants in an amount that proof will establish for the Defendants' breaches of the Policies;

B.    On COUNT II for failure to act in good faith, an award of costs and reasonable attorney fees and a money judgment in an amount that proof will establish for the Defendants' breaches of the duty of good faith;

D.    On COUNT III for declaratory relief, a declaratory judgment that Defendants are obligated to indemnify NNS for amounts incurred in connection with the Asbestos Lawsuits, including defense costs.

E.    On ALL COUNTS:

(i)    an award to Plaintiff of its reasonable attorneys' fees incurred in connection with the prosecution of its claim, including but not limited to under VA. Code Ann. § 38.2-209;

(ii)    pre- and post-judgment interest; and

18

(iii)    for such other and further relief as justice may require or this Court may

deem appropriate.

## **REQUEST FOR JURY TRIAL**

NNS hereby demands that this matter be heard before a jury on all issues so

triable.

19

Dated: November 20, 2020

KAUFMAN & CANOLES, P.C
Attorneys for Plaintiff
Huntington Ingalls Industries, Inc.


By:  /s/ Kristan B. Burch
Kristan B. Burch (VA #42640)
150 West Main St. Suite 2100
Norfolk, VA 23510
Phone: (757 624-3343
Fax:  (888) 360-9092
Email:  kbburch@kaufcan.com

Of Counsel:
BLANK ROME LLP
John E. Heintz
James S. Carter
Dominique A. Meyer
BLANK ROME LLP
1825 Eye St NW
Washington, DC 20006
Phone:  (202) 420-2200
Fax:  (202) 420-2201
Email:  jheintz@blankrome.com
Email:  jscarter@blankrome.com
Email:  dameyer@blankrome.com

20

**ATTACHMENT A**

8008721

8008722

8008723

507/1069071

507/1069072

507/1069073

507/1069074

3088711

507/3088712

507/3088713

507/3088714

507/6719471

507/6719472

507/6719473

507/6719474

50977BH/5081

507/6719472

507/6719473

509/78BH3765

509/78BH3766

509/78BH3767

C/N 7719475

509/78BH3768

507/8719472

507/8719473

509/1HB31030

509/1HB31040

8719474

509/79BH1741

80DD542C

509/80DD543C

509/80BH2562

509/80BH2563

509/80BH2564

49/99/6172/01

ZHR 4020-0601-85/78

XL 3451159

ZHR 4020-0601 (1976-1979)

ZHR 4020-0601-76/4/1

ZHR 4020-0601-74/4-2

ZHR 4020-0601-76/4-2

ZHR 4020-0601-764-3

ZHR 4020-0601/76-4

509/80BH2565

509/80DD2265C

509/80DD2266C

509/80BH4501

509/80BH4502

509/80BH4503

509/80DD2265C

PY043381

509/1HB45010

509/1HB45020

509/1HB45030

509/80DD2265C

509/KY030582

509/2KA57320

509/2KA57330

509/KY056983

509/KY030582

509/3KA50590

3KA50600

KY056983

PY232584

4KA4G510

4KA46520

509/5KA15850

4KA46540

871/4402935

871/4402936

871/4403264

871/4403265

871/4403564

PY216584

PY241084

5KA21380

4KA46530

MMA 86-156

MMA 86-157

MMA 87-144

MMA 88-142

MMA 90-111

MMA 90-112

MMA 90-113

MMA 90-114

MMA 78-105

MMA 81-105

MMA 81-106

MMA 83-101

MMA 83-102

MMA 83-103

MMA 83-108

MMA 83-124

MMA 83-132

MMA 83-137

MMA 83-138

MMA 83-140

MMA 83-141

MMA 84-126

MMA 85-138

MMA 85-144

MMA 86-107

MMA 86-137

MMA 86-154

MMA 87-106

MMA 87-132

MMA 87-142

MMA 89-106

MMA 89-129

MMA 90-101

MMA 90-115

MMA 90-131

MMA 90-144

RM212529